J-S04005-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| K.E. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| E.A.E. | : | No. 1326 MDA 2020 |

Appeal from the Order Entered October 6, 2020
In the Court of Common Pleas of York County
Civil Division at No(s):  2007-FC-000604-03

BEFORE:  OLSON, J., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY OLSON, J.:                    **FILED MARCH 23, 2021**

Appellant, K.E. ("Mother"), appeals from a custody modification order pursuant to the Child Custody Act ("the Act"),[1] 23 Pa.C.S.A. § 5328(a), that continued an award of shared legal custody of M.A.E. ("Child"), a/k/a M.E. (a female born in March 2007) between Mother and E.A.E. ("Father"), primary physical custody to Father, and partial physical custody to Mother in accordance with an existing schedule adopted under a prior custody order.  In the order challenged on appeal, the trial court denied the parties' competing requests to hold the other in contempt.  We affirm.

_____

[1] 23 Pa.C.S.A. § 5321-5340.

The parties were never married and have a history of custody litigation commencing in April of 2007, shortly after the birth of Child.[2] On October 10, 2018 and October 12, 2018, the trial court held a custody trial which resulted in a custody order entered on October 16, 2018. Under that order, the parties shared legal custody and Father retained primary physical custody subject to Mother's partial physical custody three weekends per month. On November 21, 2019, Mother filed a petition for modification of custody/contempt, alleging that Father prevented Mother from speaking with Child during his periods of custody and, further, that he prevented Mother from attending professional appointments with Child, in violation of the existing custody order. Mother sought equally shared physical custody of Child, year-round, and a finding of contempt against Father. On December 11, 2019, Father filed an answer with new matter and counterclaims, seeking sole legal custody and primary physical custody, with Mother to have periods of physical custody every other weekend (unsupervised or supervised by Mother's parents, hereafter "Maternal Grandparents"), and a finding of contempt against Mother.

On September 28, 2020 and October 1, 2020, the trial court held evidentiary hearings at which both Father and Mother were present with counsel and testified on their own behalf. At the hearing on September 28,

_____

[2] Mother has three children, including Child (collectively, the "children"). The two younger children, Child's half-siblings, are a female, Mk.E., who was eleven years old, and a male, R.E., who was six years old at the time of the hearings. N.T., 9/28/20, at 21.

2020, Child, who was 13 years old and in eighth grade, testified *in camera*, questioned by the court, in the presence of all counsel. ***See*** N.T., 9/28/20, at 4-42. On September 28, 2020, the following witnesses testified on behalf of Mother: Emily Stetler, Ph.D., a therapist for the Center For Creative Arts and Play Therapy; P.B., Mother's live-in paramour; and Mother. ***Id.*** at 46, 66, 79. Father also testified. ***Id.*** at 159. On October 1, 2020, Father presented the expert testimony of Stephanie Binter, Psy.D., a psychologist. N.T., 10/1/20, at 208. Mother presented the expert testimony of Amy Swope, Ph.D., a psychologist/clinical neuropsychologist, who Mother retained as a custody evaluator. ***Id.*** at 249.

The trial court stated the following regarding Child's testimony.

Child testified outside of the courtroom. The [c]ourt conducted all of the questioning. Both counsel were provided an opportunity for input into questioning after the [c]ourt [concluded its examination of Child]. Near the conclusion of her testimony, Child generally expressed a preference to spend more time with Father.

Trial Court Opinion, 10/6/20, at 2.

The trial court found the following from Dr. Stetler's testimony:

Dr. Stetler is a contractor for the Center for Creative Arts and Play Therapy. Her role is a therapist. She has been treating Child since June of 2019. She noted that only Child is involved in the therapy sessions. She sees Child on a bi-weekly basis. Dr. Stetler stated that she believes Child is benefitting from the therapy. She noted that Mother revoked consent for treatment in September of 2019. She believes that the revocation had to do with a dispute relating to scheduling.

***Id.*** at 2.

The trial court found the following from P.B.'s testimony.

[P.B.] is involved romantically with Mother. He and Mother met in April of 2018. While [P.B.] is from Germany originally, [P.B.'s] father is a resident of Dover and resides approximately two minutes away from Mother. [P.B.] stated that he has observed Mother as a parent. He believes that Mother has a good relationship with all of her children and that [sic] he [has] not observe[d] Mother yelling at the children. He noted that [C]hild has chores around the house and that she rarely requires discipline. Child has her own room at the house. [P.B.] testified that he works during the day and that Mother works at night as a janitor at a church preschool. [P.B.] is in the home while Mother is working.

[P.B.] testified that he has not observed Mother taking Child's phone away. Furthermore, he has never heard Mother speak negatively of Father. [P.B.] stated that Child has a good relationship with her half-siblings. He further stated that he enjoys his time with Child.

*Id.* at 2-3.

The trial found the following from Mother's testimony.

[] Mother testified that the only change in her residence since the last trial was that [P.B.] moved [in with her]. Mother continues to work at the church pre[-]school for a total of 9 hours a week. She works three separate early mornings. Mother is home in time to wake [the children up] and transport them to school. She noted that she would be able to take Child to school if she had custody during school days.

Mother noted that she and Child have a good relationship but that there is room for improvement. She stated that the previous trial should have resulted in therapy between Mother and Child to improve their relationship. Instead, Father enrolled Child for individual therapy without seeking Mother's permission or consent as to the particular therapist. Mother's frustration relating to Child's therapy is that Mother feels that she is left out of the therapy information and that the therapist favors Father in some form or fashion.

Mother then discussed issues relating to Child's participation in soccer. Mother stated that she has no issue with Child participating in school[-]related soccer. Mother did express an

issue relating to Father signing Child up for indoor soccer. These games are played on Mother's time and are played at a location at least half an hour away from her residence. This involves taking up a significant portion of one of her weekend days.

Mother denied preventing Child from speaking to Father. She noted that Child has a telephone in her room from which she can contact Father. She notes that Child regularly texts Father. Mother also complained that Father arranges dental work for []Child without seeking Mother's consent. Furthermore, Mother believes that she is informed about appointments in such a fashion as to not provide her an opportunity to meaningfully participate.

Mother complained that Father did not tell her that the composition of his household had changed. For example, Father's girlfriend moved out of the residence, and Father's brother moved into the residence.

Mother testified that Child is well[-]behaved and rarely requires discipline. She noted that she has set up a punishment in advance for Child if Child fails to adhere to warnings. She noted that she and Child engage in a number of fun activities together, including board games, shopping, and crafts. Mother noted that her son and Child do not get to see each other very often under the current schedule. Mother's son and Child only spend one weekend together per month.

With regard[] to school, Mother noted that she does obtain information from [C]hild's school on a regular basis as a result of Mother logging onto the school portal. Mother did complain that Father failed to contact her as to the decision to enroll Child in the brick and mortar school day as opposed to going to school virtually. Mother conceded that she has no objection to Child participating in the brick and mortar school.

Mother noted that her parents live close by. She stated that Child sees them on an every[-]other[-]visitation basis. Mother stated that Child and [Maternal Grandparents] are not as close as they used to be. Mother believes that therapy sessions involving Child would be a benefit. [Mother's preference would be to change the schedule to a] week-on/week-off schedule all year round. Mother believes that co-parenting counseling would be of benefit.

Mother noted that she continues to see a therapist on a once-a-week basis. Mother further noted that she is compliant with her methadone treatment. Mother denied any drug and alcohol issues at the current time.

On cross[-]examination, Mother conceded that she was ordered to reinstate consent for Child's therapy. Mother noted that the indoor soccer season consumes in the neighborhood of [three and one-half] hours of her time once a weekend[.] The indoor soccer season lasts between six to eight weeks.

*Id.* at 3-7.

The trial court noted the following from Father's testimony.

Father testified that he is a resident of Dover School District. Father noted that Child wants to continue with therapy and that he wishes to have Child continue in therapy. A number of the issues surrounding [the initial enrollment of] Child in therapy involved scheduling problems. Father stated that he signed Child up for the indoor soccer season without fully obtaining consent from Mother. He noted that he had only a short period of time in December of 2019 to make the decision[,] and that Mother did not respond promptly to his request. Father also complained that Mother failed to have Child attend two soccer games in the fall of 2019. Father noted that Child's sole activity is soccer and that she is a good student.

Father stated that he provides an opportunity for Child to contact Mother by phone. Father complained that when he initiates phone calls during the summertime to Child's phone, Child does not answer the phone or the phone is out of power.

Father noted that he has been primarily responsible for scheduling doctor visits and dental visits since [C]hild was two years of age. Father believes that he has appropriately notified Mother of the various appointments.

Father testified that he has extended family located in York County. This extended family includes his brother, [P.E.], who has been residing in his house since April or May of [2020]. Father testified that this arrangement is temporary in nature. Father's mother and stepfather reside in Florida. Father noted that he wishes to schedule a vacation for a week in December with

members of his extended family. Mother has so far refused permission for Father to take Child on this vacation. Mother complained that she did not have sufficient information about this vacation in order to provide consent. It appears that the vacation would take place during the school year and that Child would be required to miss a week of school. Furthermore, the vacation in question is a cruise. Father was unable to say whether the cruise would definitely be permitted to go forward during the pandemic.

When asked for his preference concerning legal custody, Father stated that it should remain equally shared legal custody. As to physical custody, Father stated that Mother should be restricted to one weekend per month year-round.

*Id.* at 7-9.

The trial court made the following observations based upon the testimony of Father's expert psychologist, Dr. Binter, and Mother's expert psychologist/custody evaluator, Dr. Swope.

The first witness on the second day of trial was Dr. Stephanie Binter. Dr. Binter is a licensed psychologist employed by Rost & Associates. Her testimony [largely conformed] with her report, which was marked as Father's Exhibit 1-B. It should be noted that the parties stipulated to her qualifications to render the opinions set forth in Father's Exhibit 1-B.

The next witness in the case was Dr. Amy Swope. Dr. Swope is a clinical neuropsychologist and a licensed psychologist employed by Psychological Services of York. Dr. Swope testified in conformity with her report, which is marked as Mother's Exhibit 1. It should be noted that both parties stipulated as to the qualifications of Dr. Swope. Father raised an objection to the report[,] claiming that the report failed to state that the opinions contained in the report were held to a reasonable degree of certainty in her field. Dr. Swope testified that her report stated that the findings and recommendations contained in the evaluation reflect an acceptable and reasonable degree of psychological probability based upon the entirety of the data presented. Dr. Swope then explained at trial what she meant by that statement. The [c]ourt [was] satisfied that [] the report [met] the standards for expert testimony.

*Id.* at 9-10. The trial court explained that Mother's counsel then completed cross-examination of Father, Father's counsel re-called Mother for questioning, and then the court admitted the exhibits. *Id.* at 10.

In the October 6, 2020 order, the trial court continued to award shared legal custody; Father primary physical custody during the school year, subject to Mother's exercise of partial physical custody three weekends a month; and both parties shared physical custody during the summer on a week-on/week-off basis. The court noted:

> 1. There has been no change in the dynamics since the [c]ourt's last ruling in this case.
>
> 2. Child's preference is to remain with Father [the] majority of the time.
>
> 3. Child has been doing well in school while in Father's custody and care during the school year.
>
> In addition to the above, the [c]ourt [would] issue an [o]rder consistent with [its o]pinion[,] which will include the following:
>
> * * *
>
> 5. The parties clearly are in need of co-parenting or family therapy counseling. Counsel shall select an appropriate therapist within 10 days from the date of this order. Care should be taken to see if Father's insurance will cover the cost of this therapy. The [c]ourt will select a therapist if the parties and counsel cannot agree. There should be five sessions as a minimum. To the extent that the insurance does not cover all of the costs of the therapy, the parties shall split those costs.
>
> 6. It is also clear that Mother and Child should engage in counseling separate and distinct from Child's current

counseling and from the aforementioned family therapy counseling. Again, counsel shall select an appropriate counselor within 10 days from the date of this order. Care should be taken to see if Father's insurance will cover the costs of this counseling. The [c]ourt will select a counselor if the attorneys and the parties cannot agree. There shall be five sessions at least for this therapy. The parties shall split the cost of therapy not covered by insurance. Child's current therapist shall not provide the therapy at issue.

Upon review of the parties' request for contempt, the court finds that the conduct of the parties does not rise to the level of contempt. As a result, all requests for contempt are hereby denied.

Trial Court Opinion, 10/6 /20, at 14-17.

The trial court also included additional provisions:

1. The parties shall utilize OurFamilyWizard as the principle means of communication. The parties shall split the costs of that communication system.

2. Father has requested that he be permitted to take a trip between December 6th of 2020 and December 13th of 2020. This trip would be in the form of a cruise leaving from a port in Florida. In addition to this week-long trip, Father would have to then quarantine Child for an additional two weeks upon returning from the trip. This would cover Christmas Day and a couple of days thereafter. As a result, the [c]ourt will only permit this trip if Mother consents. If Mother consents, then Mother shall be entitled to make-up time over the Christmas holiday.

3. If Child has a soccer game or practice during Mother's custody time, then Mother shall have visitation on the following Thursday from 4:30 p.m. to 7:00 p.m. This only applies to games and practices during the school year.

4. The non-custodial party is to have visitation with Child on her birthday from 4:00 p.m. to 7:00 p.m.

Trial Court Opinion, 10/6/20, at 10-16.

On October 14, 2020, Mother timely filed a notice of appeal, along with a concise statement of errors complained of on appeal. On October 28, 2020, the trial court entered its Pa.R.A.P. 1925(a) opinion.

Mother raises the following interrelated issues:

1. Whether the trial court erred and abused its fact-finding discretion in ignoring and/or failing to accept the uncontradicted or unqualified, conclusions, recommendations and expert testimony from the custody evaluator, [(]Dr. Amy Swope,) and deprived the court of the expert's guidance on the ultimate issue of physical custody and the best interest of the child?

  a. Whether the trial court abused its discretion and erred in providing too great of weight in considering the well-reasoned preference of the child, based on this [] child's lack of maturity and absent judgment, pursuant to 23 Pa.C.S. §5328(a)(7)?

  b. Whether the trial court erred in failing to give substantial weight when considering Father's effective alienation campaign against Mother?

  c. Whether the trial court abused its discretion and erred in determining that neither party was more likely than the other to encourage and permit the child to have frequent and continuing contact with the other party, pursuant to 23 Pa.C.S. §5328(a)(1)?

2. Whether the court further erred and abused its discretion in giving too little of weight to its determination that Father had refused reunification therapy between the child and Mother since the last trial over eight months before?

Mother's Brief, at 8-9.[3]

_____

[3] We note Mother numbered her issues differently and stated them somewhat differently in her concise statement, but we find her statement of the issues raised in her concise statement and her statement of questions involved

Mother summarizes her argument as follows:

The [c]ourt committed an abuse of discretion in refusing [and] failing to accept the uncontroverted conclusions and recommendations of the expert [Dr. Amy Swope] in this matter. The evaluator spent countless hours over the course of months speaking with each party, the [c]hildren, reviewing collateral sources, including documents and conducting interviews, performing tests and observing the parties and the subject minor child as well as Mother's other children. The expert's report, [Dr. Swope's report,] which included each party's version of the facts, and the expert's recommendations were uncontroverted, both before trial and during the trial, when neither party submitted any evidence that would call into dispute the validity of the report. Accordingly, the [c]ourt failed to properly consider all the evidence and made inappropriate findings of fact upon which it based its ultimate decision on physical custody.

Mother's Brief, at 15.

In custody cases under the Act, our standard of review is as follows:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial

---

sufficient to withstand a finding of waiver. *See Krebs v. United Refining Company of Pennsylvania*, 893 A.2d 776, 797 (Pa. Super. 2006) (holding that an appellant waives issues that are not raised in both his or her concise statement of errors complained of on appeal and the statement of questions involved in his or her brief on appeal); Pa.R.A.P. 302 (issues not presented to the trial court may not be presented for the first time on appeal). Mother waived any challenge to the trial court's denial of her petition for contempt by failing to raise such a challenge in her concise statement and her statement of questions involved portion of her brief, however.

court only if they involve an error of law or are unreasonable in light of the sustainable findings of the trial court.

**C.R.F. v. S.E.F.**, 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted).

We have stated:

[t]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

**Ketterer v. Seifert**, 902 A.2d 533, 540 (Pa. Super. 2006), *quoting* **Jackson v. Beck**, 858 A.2d 1250, 1254 (Pa. Super. 2004).

Regarding the definition of an abuse of discretion, this Court has stated: "[a]n abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused." **Bulgarelli v. Bulgarelli**, 934 A.2d 107, 111 (Pa. Super. 2007) (quotation omitted). In **M.A.T. v. G.S.T.**, 989 A.2d 11 (Pa. Super. 2010) (*en banc*), we stated, "[a]n abuse of discretion is also made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence." **Id.** at 18-19 (quotation and citations omitted).

Section 5323 of the Act provides for the following types of awards:

**(a) Types of award.**—After considering the factors set forth in section 5328 (relating to factors to consider when awarding custody), the court may award any of the following types of custody if it in the best interest of the child:

(1) Shared physical custody.

(2) Primary physical custody.

(3) Partial physical custody.

(4) Sole physical custody.

(5) Supervised physical custody.

(6) Shared legal custody.

(7) Sole legal custody.

23 Pa.C.S.A. § 5323.

Section 5328(a) of the Act provides as follows.

**§ 5328.  Factors to consider when awarding custody**

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328.

"When a trial court orders a form of custody, the best interest of the child is paramount." ***S.W.D. v. S.A.R.***, 96 A.3d 396, 400 (Pa. Super. 2014) (citation omitted); ***see also*** 23 Pa.C.S.A. §§ 5328, 5338.  In a custody action, it is within the trial court's discretion based on the record before it to determine the relevant weight to give each of the factors in a particular case. ***M.J.M. v. M.L.G.***, 63 A.3d 331, 339 (Pa. Super. 2013).

Here, the trial court found the following with regard to the factors listed at 23 Pa.C.S.A. § 5328(a):

> 1. Party likely to encourage contact with other party.  The [c]ourt finds this factor is neutral.  The [c]ourt did not receive any credible testimony that either party is particularly likely to encourage contact between child and the other party.
>
> 2. Present and past abuse.  The court finds that this factor is neutral.  The [c]ourt notes that there [have] been no claims of abuse since the date of the last trial.
>
> 3. Parental duties performed on behalf of Child.  The [c]ourt finds this factor is neutral.  The [c]ourt accepts the testimony of both Mother and Father as credible that they perform all of the necessary duties on behalf of Child.
>
> 4. Need for stability in Child's education, family life, and community life.  The [c]ourt finds that this factor slightly favors Father.  The [c]ourt accepts Father's testimony that he does his best to provide Child a stable environment.  It should be noted, however, that since the last trial in this case, Father's paramour of some time is no longer in a relationship with Father.  It should also be noted that Mother has taken steps in order to provide a more stable existence for Child when Child is in her custody.  As noted by Dr. Swope, Mother has made substantial progress in her last five years of sobriety.

- 15 -

5. Availability of extended family. The [c]ourt finds that this factor is neutral. Both sides testified credibly that Child has significant relationships with members of [the parents'] extended famil[ies].

6. Sibling relationships. The [c]ourt finds that this factor favors Mother. The [c]ourt accepts Mother's testimony as credible that Child has reasonably significant relationships with her two half-siblings. Obviously, these relationships are not as strong as they could be[,] given the fact that Mother has only recently obtained a significant amount of custody.

7. Well-reasoned preference of Child. The [c]ourt finds this factor favors Father. Child did express a preference to spend less time with Mother than the custody schedule currently provides. It should be noted that Child presented as somewhat immature during her testimony. This lack of maturity was also confirmed by Dr. Swope.

8. Attempts to turn Child against other parent. The [c]ourt finds this factor is neutral. The [c]ourt accepts the testimony of both parties as credible that they do not turn Child against the other parent.

9. Parent more likely to maintain a consistent and nurturing relationship. The [c]ourt finds that this factor slightly favors Father. As stated above, Father has a history of having a more stable environment than Mother. In addition, the [c]ourt accepts the testimony of Father as credible that he has a strong bond with Child. Due to Mother's lack of custody over the years, Mother has not been able to establish as strong of a bond.

10. Party more likely to attend to the physical, developmental, educational, and special needs of Child. The [c]ourt finds this factor slightly favors Father. The [c]ourt accepts Father's testimony as credible that he is an attentive parent to Child's physical and educational needs. It should be noted that Child is a very good student. Father is also attentive to Child's extracurricular activities.

11. Proximity of residences. The [c]ourt finds that this is not a factor in this case. The parties reside within a short distance of each other and are both residents of the Dover Area School District.

12. Availability of appropriate [c]hild care arrangements. The [c]ourt finds that this factor is neutral. Both parties have child care arrangements which are appropriate.

13. Level of conflict and willingness to cooperate. The [c]ourt finds this factor is neutral. This is a high conflict case. Both parties play a part in the high level of conflict.

14. Drug and alcohol abuse. The [c]ourt finds this factor slightly favors Father. Mother has a highly significant history of drug and alcohol abuse. To Mother's credit, Mother has maintained sobriety for over five years. The [c]ourt further finds that Mother has taken appropriate steps to maintain her sobriety.

15. Mental or physical condition of a party. The [c]ourt finds that this factor favors Father. The testimony of Dr. Binter and Dr. Swope is that Mother suffers from PTSD [Post-Traumatic Stress Disorder]. Having stated that, Mother is taking appropriate steps in the form of therapy to manage that issue.

16. Other factors. The [c]ourt did not consider any other factors in rendering its decision.

Trial Court Opinion, 10/6/20, at 10-14.[4]

After a careful review of the record, including the notes of testimony and all of the exhibits admitted at the hearing on the parties' modification and contempt petitions, we find that Mother's issues lack merit, for the reasons expressed by the trial court in its Rule 1925(a) opinion. Additionally, the trial court stated:

_____

[4] While the trial court did not address section 5328(a)(2.1) in its October 6, 2020 opinion, there is nothing in the record regarding the information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services) of the Act that the trial court should have considered.

> In sum, the [c]ourt reiterates what it stated in its [October 6, 2020] opinion: that, after reviewing the testimony presented to the [c]ourt, as well as the exhibits admitted into evidence, and after considering and applying the pertinent custody factors set forth in 23 Pa.C.S.A. § 5328(a), "[t]here has been no change in the dynamics" of this case, such that it warrants a change it the parties' custodial arrangement. Trial Court Opinion[, 10/6/20,] at 15, ¶ 1. And, while this [c]ourt recognizes that the appellate court may reject [its] conclusions, it will only do so if those conclusions involve an error of law or are unreasonable in light of the sustainable findings of this [c]ourt. And, in this case, we simply do not find that [Mother] has made such a showing.

Trial Court Opinion, 10/26/20, at 10.

Mother challenges the trial court's conclusions and assessments and seeks to have this Court re-weigh evidence and/or re-assess credibility in accordance with her view of the evidence, and give more weight to the recommendation of her expert, Dr. Swope. After a careful review of the record in this matter, we find that the trial court, in comprehensive fashion, considered Dr. Swope's recommendations, and considered and weighed all relevant custody best interest factors under 23 Pa.C.S.A. § 5328(a). We will not disturb the trial court's findings of fact and determinations regarding credibility and weight of the evidence absent a finding that the trial court committed an abuse of its discretion. *See C.R.F.*, 45 A.3d at 443. The competent evidence in the record supports the trial court's conclusions. Thus, we do not find an abuse of discretion here. Accordingly, we affirm the trial

court's order regarding the parties' petitions for modification of the custody order, continuing the previous award of custody.[5]

Order affirmed.

Judgment Entered.

*Joseph D. Seletyn*

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>03/23/2021</u>

---

[5] We find that Mother waived appellate review of her claim set forth as issue 1(c), regarding the trial court's consideration of 23 Pa.C.S.A §5328(a)(1), because she failed to discuss the issue and support it with citations to case law. "[A]rguments which are not appropriately developed are waived. Arguments not appropriately developed include those where the party has failed to cite any authority in support of a contention." *See Lackner v. Glosser*, 892 A.2d 21, 29-30 (Pa. Super. 2006) (citations omitted); *see also Chapman-Rolle v. Rolle*, 893 A.2d 770, 774 (Pa. Super. 2006) (stating, "[i]t is well settled that a failure to argue and to cite any authority supporting an argument constitutes a waiver of issues on appeal") (citation omitted). Even if Mother had not waived her issue 1(c), we would find Mother's challenge lacks merit based on the trial court's reasoning and our conclusion that competent evidence of record supports the trial court's weight and credibility determinations in assessing the best interests factors under section 5328(a).